SHIELDS, J.
Suit was brought in the court of common pleas of said Knox county by Harriet T. Miles against Mary B. Swetland et al, to' contest the validity of the last will and testament of Phoebe Thompson, deceased. The petition was in the short form authorized by Sec. 12082 G. C. An order was duly entered on the journal of said court as provided, and upon the issue being submitted to a jury whether the writing produced was or was not the last will and testament of the said Phoebe Thompson, deceased, the verdict of the jury was that the same was not her last will and testament. Upon a motion for a new trial being overruled, judgment was entered upon said verdict and a petition in error was filed in this court seeking a reversal of said judgment.
The principal errors alleged are (1) that the court below erred in holding that the plaintiff below is not equitably estopped to maintain said action; (2) that said court erred in excluding the testimony of the witness, Calvin Trott, offered in behalf of the defendants below; (3) that said court erred in giving in its charge to the jury a certain proposition of law sub *459 mitted in Bequest No. 3, hereinafter referred to; (4) that the verdict of the jury is against the weight of the evidence.
Copying the statement of counsel for plaintiffs in error as contained in their brief covering a chronological history of the ease in respect to the execution of said will and the relation of the several plaintiffs in error and defendant in error hereto to each other and their relation as beneficiaries under said will, including the initial and partial distribution of said estate by the executors thereof, we have the following:
“Phoebe Thompson died June 7, 1907. The paper writing purporting to be her last will and testament was executed November 28, 1904, and probated December 31, 1907. She was survived by one daughter and three granddaughters, her husband, Dr. Thompson, having died some twenty years before her death. The surviving daughter, Mary T. Swetland, died in July, 1912. She was survived by two of the granddaughters of the said Phoebe Thompson, two of the defendants below— Anna E. Swetland Gotchall and Harriet T. Swetland. The other granddaughter, Harriet T. Miles, the defendant in error, is the daughter of Mrs. Charles E. Miles who died about the time of the date of the birth of the said Harriet T. Miles, October 29, 1896. At the time of her death the said Phoebe Thompson had two sons-in-law, Charles E. Miles, the fáther of the said Harriet T. Miles, and H. C. Swetland, the father of two of the plaintiffs in error, Anna E. Swetland Gotchall and Harriet T. Swetland.
“By the provisions of said will each of these two sons-in-law was bequeathed the sum of $1,000, and the surviving daughter. Mary T. Swetland, was bequeathed all the shares of the capital stock of the said Phoebe Thompson in the First National Bank of Mt. Yernon, Ohio.
“That Charles E. Miles was the duly appointed, qualified, and acting guardian of the defendant in error, Harriet T. Miles, having been appointed as such guardian by the Probate Court of Franklin County, Ohio, December 20, 1897.
“Upon the probate of said will the said Charles E. Miles father of the defendant in error and her guardian was, with the said H. C. Swetland, appointed and qualified as executors under said will, December 31,1907. On February 17, 1908, said executors prepared an inventory of the estate of the said Phoebe Thompson, deceased, showing her personal estate to be $32,572.07.
‘ ‘ That on or about January 20,1908, said executors with the said Mary T. Swetland, who was named in said will as trustee *460 of the residuary estate bequeathed to her said three granddaughters, met at the Thompson homestead and there and then some arrangement, understanding, agreement — some family arrangement, understanding or agreement was reached and concluded whereby there was a distribution of the assets of the estate of the said Phoebe Thompson, deceased, in the amount of $15,000. The said Charles E. Miles, father and guardian aforesaid, took $5,000 of the assets of this estate, and Swetland and his wife, or both, for their two children, took $10,000 worth of the assets of the estate.
“At the same time or shortly thereafter, Charles E. Miles took or received his legacy out of the assets of said estate the sum of $1,000, likewise said Swetland took his legacy of $1,000; at the same time, likewise, Mary T. Swetland took'the forty (40) shares of stock in the First National Bank of Mt. Vernon, Ohio, appraised at $5,400, her legacy under the will. The $15,000 distributed and divided by this agreement was not inventoried.
The foregoing statement embraces the facts upon which counsel for the plaintiffs in error claim the court below erred in holding that the same do not constitute an equitable estoppel against the plaintiff below and bar her from prosecuting this action. Although a child of tender years, a minor, at the death of her grandmother in June, 1907, which is conceded and although recognizing the saving clause in Sec. 10531 G-. C., which gives to minors the right to contest a will within two years after attaining their majority, counsel for plaintiffs in error contend that the defendant in error by and through the action of Charles E. Miles as her guardian, under the distribution made of said $15,000, of the assets of said estate, as appears in the foregoing statement of counsel for plaintiffs in error, works an equitable estoppel against the said defendant in error as the ward of said guardian from contesting said will.
In their brief counsel for plaintiffs in error in commenting upon this branch of the case quote from the case of Van Duyne v. Van Duyne, 14 N. J., Eq., 49, wherein the Chancellor announcing the opinion in that case says:
“The rule in equity is well settled. A man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well grounded, which shall defeat or in any way prevent the full effect and operation of every part of the will. ’ ’
*461 An examination of this case shows that a bill was filed to enforce a certain provision made in favor of the widow of the testator against certain real éstate devised by him to his son, wherein the support of the widow was made a charge upon said real estate and the same was made subject to the support of the wife of the testator during her widowhood. By answer the son set up that he did not take said real estate by gift, but that he was a purchaser thereof for a valuable consideration, averring that he had rendered certain services to his father, the testator, after attaining his majority without receiving compensation therefor, and that the services so rendered were an equitable set-off against the value of said 'real estate so devised, and that therefore said real estate was not equitably chargeable with the support of said widow beyond the value of her dower therein. It is scarcely necessary to add that the defense here set up was held to constitute no defense to said bill. This is not new, but well settled doctrine, and it is quite apparent that the ease cited is not applicable to or determinative of the question at issue here.
Counsel also cite in support of their contention the case of Hamblett v. Hamblett, 6 N. H. 333, decided in 1833, in which the first paragraph of the syllabus of the court in said case reads as follows:
“A party who has received a legacy under a will, can not be permitted to contest the validity of such will, without repaying the amount of the legacy, or bringing the money into court. And the rule applies even if the party was a minor when the legacy was received. ’ ’
Upon its face, the case cited would seem to have some application to the case at bar. Although an old ease running back as it does seventy-five years and more when decided, but as was well said by another, “the principles of the law when laid in reason never lose their force through the lapse of time. ’ ’ Let us examine the facts upon which this opinion rests. It appears that the action was based upon the will of David Hamblett executed December 30, 1816. An appeal was taken from the decree of the judge of probate in admitting said will to probate, to which an exception was taken on the ground that the testator did not *462 have sufficient testamentary capacity at the time of its execution to make a will. It also appears that the appellant a short time before she became of age received the legacy given her upon said testator’s will. Numerous questions arose upon the record, among them, the question as to whether the appellant should not have brought her legacy into court that she received under said will before proceeding to contest said will, and the court held that she should adding that “such affirmance, however, is not an absolute bar against the party seeking to contest the will though under circumstances of delay connected with other circumstances, it has been held to preclude the party from contesting the will afterward.” As treating of the injustice of permitting one who has accepted and received a legacy under a will to hold it pending the outcome of a contest of such will, the judge announcing the opinion in said case says:
“True, the appellant when she received this legacy was a minor. But she was then, although not of legal age, of an age to exercise some discretion. She was then more than eighteen years of age, at which period her legacy was payable to her by the will. She was aided by her friends and connections and one of them actually agreed to be bound that she should execute a release when she became of age. The legacy was fairly paid, and for aught which appears, the avails are still in her possession. ’ ’
The main question raised in the case cited was on the motion for a rule requiring the appellant to bring into court the legacy received by her under the will before proceeding to contest its validity. What the statutory provisions of the state of New Hampshire relating to minors were at that time do not appear; nor does it appear that there was any statute in that state at that time containing any saving clause in favor of the disability of infants in the matter of contesting a will; nor does it appear that the appellant was under guardianship and under bond, but it does appear that said appellant was then more than eighteen years of age, “of an age to exercise some discretion” when her legacy was payable to her by the terms of said will, and when she was then legally entitled to be paid her said legacy. It was paid to her, accepted and receipted for by her, and she held it, and then attacked said will for the alleged reason of “the undutiful conduct of the appellee towards her mother in requiring *463 her to render an account of her administration in the probate office, and in other matters specified. ’ ’ Can it be said that the ease cited is decisive of the case at bar ? Will it be claimed that the facts in the case cited run parallel to the facts in the case at bar? Here the defendant in error at the time her guardian received $5,000 of the division made of the $15,000 at the Thompson homestead was a mere child, incapable in law of acting for herself in any matters affecting her interests, whose keeping and care were in the custody of the law, confided to a trustee whose bond is her continuing security and protection and whose stewardship is controlled by law. In this bonnection we might mention Sec. 10939 G. C. by virtue of which probate courts are given special supervision over the estates of minors “to promote the faithful and correct discharge of the duties of guardians and to preserve the estates of minors for whom guardians are appointed” a provision intended to prevent the failure of guardians to do full duty in the administration of their trusts. Reverting to the New Hampshire case referred to, in that case the minor herself accepted and receipted for her legacy, but not so here. Presumably the defendant in error on account of her tender years knew nothing whatever of the transaction referred to at the Thompson homestead when said division was made in January, 1908, but it appears of record that up to that time, at least up to the time of the commencement of proceedings herein, she has not received a dollar of the sum so received by her guardian, nor does it appear that said guardian has accounted for the same or any part thereof. There being no opportunity afforded her for a return of the money so received by her guardian, of course she could not restore it to the estate, nor could she be called upon to do so. Vogelsang v. Null, 67 Texas, 465, 468 [3 S. W. 451] ; Stull v. Harris, 51 Ark., 294 [11 S. W. 104; 2 L. R. A. 741], Nor was there any-ratification of the act of her guardian shown, but a prompt avoidance of the same upon her attaining her majority followed as evidenced by the commencement of proceedings herein.
Referring to the admission of the executors in dividing this estate to the extent of $15,000 between themselves and not including the same in their inventory of the estate assets, it was claimed that they were led to make such division to avoid the *464 payment of taxes thereon. It may be that such was their purpose, and if it was, it is unnecessary to add that such act was no less a violation of law and of trusteeship of estate property as well. Counsel for plaintiffs in error say “it was irregular but not illegal.” "We do not feel called upon to discuss the claim of the state upon estates for the payment of taxes, nor of the duties of executors in respect to trust funds. Suffice it to say that the distinction sought to be made here by counsel in this matter does not appeal to the judgment or conscience of this court. Continuing counsel add: “So that when Charles T. Miles collected the $5,000 from himself and his co-executor he was simply doing his duty, and the legal duty done binds his ward.” And the logic of this proposition, too, fails to commend itself to the approval of the court. An examination of this record shows that within a few days after their appointment and qualification, these executors, acting without bond, assembled the more available assets of this estate and parceled them out between themselves and the" trustee of the residuary estate of said granddaughter, without any order or sanction of the court having jurisdiction over the distribution of estates, and without even making any return to said court of an inventory of such assets or of such distribution. The statutes plainly point out the manner of making distribution of the assets of the estate of a deceased person, and it is enough to say that these statutes were not followed in this instance. Further, we dissent from the conclusion stated by counsel that such act of the guardian “binds his ward. ’ ’ While the authorities in all jurisdictions are not in accord upon this subject, we believe the general rule is sustained by the weight of authority and upon reason, that the guardian can not thus bind his ward, and we therefore hold that the defendant in error is not equitably estopped from maintaining this action to contest said will: 22 Cye., 512 and cases cited; Kelley v. Hazzard, 96 Ohio St. 19 [117 N. E. 182]; Lanning v. Brown, 84 Ohio St. 385 [95 N. E. 921; 24 Ann. Cas. 772].
The second ground of error alleged is the rejection of the testimony offered by the witness Calvin Trott, called to testify on behalf of the plaintiffs in error, to a certain conversation had between himself and the said Phoebe Thompson, deceased, in reference to the latter’s will after the same has been drafted by *465 one R. R. Melntire, when the said Trott was called into the house of the said deceased to examine said will and inform her if the same properly stated and embodied her requests as made known to him. The questions propounded to said witness were as follows:
“Q. * * * Now did you have a talk with Mrs. Thompson there about this will? * # *
A. I did.
Q. Now the question! You may state what she said and what you said. ’ ’
On objection being made the same was sustained by the court' below and an exception duly taken. The question made is simply one involving the competency of the witness to testify to the conversation referred to. That the witness Trott was considered by the deceased as her attorney in relation to her will is apparent. Was the conversation referred to competent? If it was, it is conceded that it falls within the exception named in Sec. 11494 G. C., and which reads as follows:
“An attorney, concerning a communication made to him by bis client in that relation, or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient : and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject.”
While in its final analysis the determination of what appears to be the issues as made by the evidence in the case tending to show want of testamentary capacity on the part of the testatrix and undue influence upon her, is not to be lost sight of, still the question here presented is one of the competency of testimony arising out of a confidential relation created by the act of the parties which is protected by law, unless it falls within the exception enumerated in said See. 11494. True, 'the testimony offered, if introduced, may have thrown light upon the state of mind and the expressed wishes of the testatrix, but the law has wisely placed a ban upon and excluded communications between attorney and client pending professional relations, unless the party expressly waives such privileged communications. In their exhaustive research, counsel for plaintiffs in error cite us to *466 numerous decisions of courts of last resort of various states bolding— (1) that an attorney may testify to communications made to bim by a deceased client upon a contest of tbe validity of tbe will of sucb deceased client; and (2) that in a will contest a waiver of any disability growing out of the confidential relation and privileged communications made to- an attorney by a deceased client may be made by the personal representative, executor or administrator. But it must be remembered that we have in this state a statute prescribing a rule of evidence in this class of cases, which has been construed by the Supreme Court of this state, and whose decision is controlling with this court. Decisions in other states are persuasive and useful only when the Supreme Court of this state has not passed upon the same or like questions presented for solution, but Avhen so passed upon and adjudicated, such adjudication is to be followed by inferior courts. The case referred to is the case of Ausdenmoore v. Holzbach, 89 Ohio St. 381 [106 N. E. 41], which we think is decisive of the principle involved in the question raised here. In that case the contention arose over the question of “the admissibility of the evidence of certain physicians touching the nature and seriousness of the injuries of the plaintiff below,” and the court in considering the exceptions mentioned in said See. 11494, namely, “but the attorney or physician may testify by express consent of the client or patient, and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject,” placed the following construction on the said exceptions and held:
‘ ‘ This qualifying clause Ave hold to mean that there can not be a waiver except in two ways: First, by an express consent to the patient, or by the patient taking the stand and voluntarily testifying as to the things and matters communicated to his physician, the latter being held to be in effect an express waiver as to that physician. There being no express waiver nor any testimony by the plaintiff, touching the things and matters communicated to such physician, whose testimony was excluded, we find there was no error.”
Here, as there, no express waiver was shovm, not er^en a syllable of testimony having been offered to show that such communication was authorized by the deceased. Her lips Avere closed *467 in death, and she could not be heard to testify. Of course it is unnecessary to add that the situation would have been different had the witness Trott signed said will as a witness, in which event he would have been released from the operation of said statute. Baird v. Dietrick, 8 App. 198 [28 O. C. A. 257].
Following the decision of the Supreme Court in the case referred to, we hold that the action of the court below in excluding the testimony offered by the witness Trott was proper and that the same was not erroneous.
It was also contended on behalf of the plaintiffs in error that the court below erred in its charge to the jury, especially in giving what is designated as request No. 3, which reads as follows:
“Fraud is in its nature closely allied to undue influence and it is practically impossible to distinguish the two as the same evidence often tends to support each charge. ’ ’
The foregoing appears to be an extract from the text of Page, Wills, Sec. 122, and which appears to be supported by authorities cited in a note.
As we had occasion to remark at the outset of this opinion, the form of petition filed herein is authorized by statute, and while there may exist a division of opinion in the profession as to the propriety of such legislative enactment — overturning and setting aside as it does, in the opinion of many, the rules of pleading formally observed in such cases — it is a form of pleading authorized by statute and therefore adopted and followed: As was said by Judge Williams, speaking for the court, in the ease of Dew v. Reid, 52 Ohio St. 519 [40 N. E. 718] :
“While that issue may be made up either by the pleadings, or by an order entered on the journal of the court, it must, whichever the mode adopted, be the broad issue required by the statute, whether the instrument produced is the valid will of the alleged testator; and, as the proof may be commensurate with the issue, any competent evidence tending to prove that, fo*r any reason, it is not his valid will, is admissible, and should receive proper consideration by the jury.”
Hence the door is wide open for the admission of any competent evidence tending to prove the issue. Just how far the *468 question of fraud may be removed from the question of undue influence in a will case may be difficult of intelligent solution. Indeed the history of litigation of this character often-times shows that they are closely allied — so much so that they may be termed close neighbors, but whatever the fact, such fact does not lessen the duty of the trial court to properly instruct the jury in relation thereto. Here it was claimed on the part of the plaintiffs in error that fraud was not charged, nor was it shown upon the trial, the contrary being claimed on the part of the defendant in error. While we recognize the general rule that the jury should be instructed with reference to the issues in the ease on trial, and not be given in abstract and general terms, when such terms may mislead the jury, and further, that it is error to introduce into a charge an instruction on an issue not raised by the pleadings or evidence, we are far from being persuaded -that a reading of the evidence contained in the bill of exceptions in this case does not furnish sufficient ground for the instruction given and as given. At best, we do not think said instruction can be considered as prejudicially affecting the interests of the plaintiffs in error in this action.
As to the remaining ground of error, namely, that the verdict of the jury is against the weight of the evidence, it is a sufficient answer to this to say that the record herein does not make a ease to warrant the interference of the court on this ground.
The judgment of the court of common pleas is affirmed.
Houck, J. and Patterson, J., concur.